IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS H. GOTSHALL, | ) | CASE NO. 5:18-cv-01608 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN CHARMAINE BRACY, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

On July 9, 2018,[1] *pro se* Petitioner Chris H. Gotshall ("Petitioner" or "Gotshall") filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition").[2]  Doc. 1.

Gotshall challenges the constitutionality of his conviction and sentence in *State of Ohio v. Chris H. Gotshall*, Case No. 2014 CR 0773 (Portage County).  Doc. 1.  A jury found Gotshall guilty of felonious assault.  Doc 11-1, p. 13, 57, 67-68.  The trial court sentenced Gotshall to four years in prison.  Doc. 11-1, p. 60.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  Pending before this Court is Respondent's Motion to Dismiss filed on April 1, 2019.[3]  Doc. 17.  Gotshall filed a response on May 23, 2019,

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  In his Petition, Gotshall declares that he placed his Petition in the prison mailing system on July 9, 2018. Doc. 1, p. 14.  Gotshall's Petition was docketed in this Court on July 13, 2018.  Doc. 1.

[2] Pursuant to the Court's August 3, 2018, Order, (Doc. 5), on August 29, 2018, Gotshall filed a supplement to his Petition which sets forth Ground Two (Doc. 6).  Grounds One and Three set forth in Doc. 1.

[3] Respondent originally filed a Motion to Dismiss on November 29, 2018.  Doc. 11.  On March 13, 2019, the Court denied that motion without prejudice to ensure that all grounds for relief were addressed and to ensure all parties had the opportunity to be fully heard.  Doc. 16.  The state court record was filed.  Doc. 11-1.  Portions of the trial transcripts were later filed.  *See* Doc. 23.

(Doc. 21), and Respondent filed a reply (Doc. 25). Gotshall filed a reply to Respondent's reply. Doc. 25. While Gotshall did not seek leave to file his reply to Respondent's reply, considering Gotshall's pro se status, the undersigned has considered his reply when issuing this Report and Recommendation.

For the reasons set forth below, the undersigned concludes that Gotshall's Petition is untimely under 28 U.S.C. § 2244(d). Further, Gotshall has not demonstrated an entitlement to equitable tolling of the statute of limitations. Accordingly, the undersigned recommends that the Court **GRANT** Respondent's Motion to Dismiss (Doc. 17) and **DISMISS** Gotshall's Petition (Doc. 1, Doc. 6).

## I.     Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Eleventh District Court of Appeals summarized the facts underlying Gotshall's conviction as follows:

> [*P2] This case emanates from an encounter that occurred between appellant and Nick Duplessis on August 3, 2014, which resulted in damage to Nick's vehicle. Appellant was indicted on October 16, 2014, on one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2). Appellant pled not guilty, and a jury trial ensued.
>
> [*P3] Nick was dating appellant's ex-girlfriend, Faydera Wood, at the time of the incident. Ms. Wood testified that she broke up with appellant after she discovered he was "bashing [her] on social media to his family, friends." She testified appellant did not react well to her breaking up the relationship. Nick and appellant both testified that the three of them had a tense encounter at a storage unit in July 2014, not long after appellant and Ms. Wood had ended their relationship. The facts of the August 3, 2014 incident were disputed at trial.

[*P4] According to Nick, while he was stopped at a stop sign on August 3, 2014, appellant pulled up behind him. Nick threw his hands up in the air to indicate "what are you doing here." Appellant tried to drive around the driver's side of Nick's vehicle and hit the rear left side of Nick's vehicle with the front right side of appellant's vehicle. Nick then turned right on to the cross street in an attempt to get away from appellant, but appellant followed him and tried to force him off the road by colliding into the driver's side of Nick's vehicle. Nick sped up and then stopped his car angled in the roadway so that appellant could not leave the development. Nick got out of his vehicle to look at the damage and started walking towards appellant. Nick testified that appellant backed up and then sped forward in an attempt to run him down with his car. Nick stated appellant came within inches of Nick's person and, at the last second, swerved to avoid hitting him. Appellant did not stop to address the damage to Nick's vehicle.

[*P5] Appellant testified in his own behalf and described Nick as the aggressor. According to appellant, he was driving in the middle of the road to avoid potholes, and Nick was "riding my back bumper for awhile." He testified that Nick drove around his passenger side, struck his vehicle, and tried to force him off the road. "When he realized that he couldn't do it, he went past me, made a left turn, stopped in the middle of the road, got out of his car and was pointing his hand at me as if he was holding a gun." Appellant testified he started backing up, and Nick came towards him as though he was holding a gun. Appellant testified he then put his car into drive to avoid backing into a ditch and drove forward past Nick, coming within two feet of him. During cross-examination, appellant was unable to explain why the damage to Nick's vehicle was consistent with Nick's version of events.

[*P6] Also during cross-examination, the prosecutor asked appellant about his feelings regarding his break-up with Ms. Wood. Appellant testified he harbored no ill feelings and that the break-up was mutual. In an attempt to impeach appellant's credibility, the prosecutor used a printout from Facebook to refresh appellant's recollection regarding a conversation he had with a third party. That conversation included statements evidencing appellant's negative feelings about Ms. Wood and the end of the relationship. Defense counsel repeatedly objected to the use of this printout, accusing the prosecutor of withholding evidence during discovery. The prosecutor responded he was not admitting the printout into evidence, and the trial court overruled the objections. Defense counsel also moved for a mistrial, which the court denied. On May 6, 2015, appellant was found guilty of felonious assault by the jury.

[*P7] Two days later, on May 8, 2015, the trial court held a hearing with defense counsel and the prosecutor to address defense counsel's allegation that the prosecutor had committed a discovery violation. The hearing was requested by counsel to correct the record, as defense counsel had discovered that he overlooked the printout on the disc provided by the prosecutor during discovery. Defense counsel apologized, withdrew his objections to the use of the printout during cross-

examination, and withdrew his motion for a mistrial. Appellant was not present at this hearing.

*State v. Gotshall*, 2016 Ohio App. LEXIS 1969, ** 1-5, 2016-Ohio-3122 *1-6 (Ohio App. 11 Dist., May 23, 2016); Doc. 11-1, pp. 57-60.

## II. Procedural Background

### A. State Conviction

On October 16, 2014, the Portage County Grand Jury indicted Gotshall on one count of felonious assault, a felony of the second degree. Doc. 11-1, p. 5. Gotshall pleaded not guilty. Doc. 11-1, p. 6. A jury trial commenced on May 5, 2015, and on May 6, 2015, the jury returned a guilty verdict as to the charge in the indictment. Doc. 11-1, pp. 11-12, 13. At a sentencing hearing held on July 31, 2015,[4] the trial court sentenced Gotshall to a four-year prison term.[5] Doc. 11-1, pp. 14-16.

### B. Direct appeal

On August 14, 2015, Gotshall, through new counsel, filed a Notice of Appeal (Case No 2015PA00057). Doc. 11-1, pp. 17-19. On December 11, 2015, Gotshall's appellate brief was filed. Doc. 11-1, pp. 20-28. Gotshall's sole assignment of error was that "The trial court erred when it permitted the State to question Appellant regarding written statements made to a third-party who was not called to testify despite the fact that the Prosecutor intentionally failed to disclose this evidence to the Defense in discovery." Doc. 11-1, p. 22. After the State filed its brief on appeal (Doc. 11-1, pp. 29-41), indicating that a post-trial hearing was conducted at which time defense counsel acknowledged receiving the evidence that he contended had not

---

[4] The order and journal entry was docketed on August 4, 2015. Doc. 11-1, p. 14.

[5] Pursuant to the court of appeals' remand order, the sentencing entry was corrected by a nunc pro tunc entry to accurately reflect that Gotshall did not plead guilty but was found guilty by a jury. Doc. 11-1, pp. 60, 67-68, 70-72.

been produced during discovery by the Prosecutor (Doc. 11-1, p. 39), Gotshall sought leave to file an amended brief, with an amended brief attached (Doc. 11-1, pp. 42-43, 44-55). In his motion for leave, Gotshall indicated that it appeared that a hearing had been held following trial and, at that hearing, prior defense counsel acknowledged that the evidence at issue had been turned over during discovery but Gotshall himself was not aware that the hearing had occurred. Doc. 11-1, p. 42. Also, in his brief, Gotshall indicated that the docket did not reflect that the hearing had occurred and, as the State noted in its brief, the transcript from the hearing was mislabeled May 5, 2015, rather than May 8, 2015, the date of the post-trial hearing. *Id.* The court of appeals construed Gotshall's motion as a motion for leave to file instanter and granted the motion, accepting the amended brief that was filed on January 15, 2016, and attached to the motion for leave. Doc. 11-1, p. 56. Gotshall's brief filed on December 11, 2015, was stricken. *Id.* In his amended brief, Gotshall raised the following two assignments of error:

1. Appellant received ineffective assistance of counsel at the trial level. Trial counsel admitted to having not fully reviewed the discovery file, and as such was completely unprepared for a line of questioning which he deemed so prejudicial to the Appellant that he moved for a mistrial. Were it not for counsel's errors, the result of the trial would have been different.

2. Appellant's Constitutional and statutory rights to be present for all stages of trial were violated by his exclusion from the hearing during which defense counsel admitted to having received disputed evidence filed during the discovery process.

Doc. 11-1, p. 47. On May 23, 2016, the Eleventh District Court of Appeals affirmed the judgment of the trial court. Doc. 11-1, pp. 57-70. The court of appeals remanded the matter, however, "for the trial court to enter a nunc pro tunc entry reflecting that appellant did not plead guilty to felonious assault but rather was found guilty following a jury trial."[6] Doc. 11-1, pp. 68-69.

---

[6] On May 25, 2016, the trial court entered the nunc pro tunc entry. Doc. 11-1, pp. 70-72.

**C.   Motions for Judicial Release**

Prior to and after the court of appeals issued its decision on May 23, 2016, Gotshall filed motions for judicial release, twice with counsel and once *pro se*.  Doc. 11-1, p. 73 (February 23, 2016, motion filed with counsel), pp. 75-84 (July 6, 2016, motion filed *pro se*), pp. 86-94 (April 13, 2017, motion filed with counsel).  The trial court denied all three motions.  Doc. 11-1, p. 74 (February 25, 2016, order), p. 85 (July 7, 2016, order), p. 95 (April 18, 2017, order).

**D.   Motion for Delayed Appeal, Application for Reopening pursuant to App. R. 26(B), and Motion to Reopen Appeal**

On August 16, 2016, Gotshall filed a *pro se* Motion for Leave to File Delayed Appeal pursuant to App. R. 5 in the court of appeals (Case No. 2016PA00052).  Doc. 11-1, pp. 95-102.  On November 3, 2016, Gotshall filed a Motion to Amend his Pro Se Motion for Delayed Appeal pursuant to App. R. 5 to an Application for Reopening an Appeal pursuant to App. R. 26(B) (Case No. 2016PA00052).  Doc. 11-1, pp. 103-119.  In his memorandum in support of his motion, Gotshall raised three assignments of error, asserting ineffective assistance of appellate counsel:

1. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to investigate defendant's case, failure to interview potential witnesses, prepare for trial and get evidence for defendant to present at trial.

2. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failing to requests [sic] a mistrial when the jury heard the dispute between the appellant and prosecutor during cross examination concerning appellant's requests to take a polygraph test and/or object to the trial court continuing the trial with a tainted jury.

3. Appellate counsel was ineffective for failing to assign as error the prosecutor misconduct concerning the prosecutor lying in open court about the conversation between the prosecutor, appellant and his attorney pursuant to appellant's offer to take a polygraph test as it relates to the events of August 3, 2014.

6

Doc. 11-1, pp. 107-115. On November 18, 2016, the State filed an opposition to Gotshall's request to reopen his appeal. Doc. 11-1, pp. 120-127.

On November 28, 2016, the state court of appeals overruled Gotshall's August 16, 2016, motion for leave to file a delayed appeal and dismissed the appeal, (Doc. 11-1, pp. 128-131), concluding "It appears that appellant is attempting to utilize App. R. 5(A) to reopen his previous appeal and have an evidentiary hearing to present new evidence. Neither of the foregoing can be accomplished through an App. R. 5(A) motion for leave to file a delayed appeal[]" (Doc. 11-1, p. 129). On December 6, 2016, the court of appeals overruled Gotshall's November 3, 2016, motion to amend his motion for delayed appeal to an application for reopening. Doc. 11-1, p. 132. After the court of appeals entered its rulings, on December 9, 2016, Gotshall filed a reply to the State's opposition to his request to reopen appeal. Doc. 11-1, pp. 133-137.

On August 25, 2017, Gotshall filed a *pro se* Motion to Re-Open Appeal (Case No. 2015-P-0057). Doc. 11-1, pp. 138-140. On September 14, 2017, the court of appeals overruled Gotshall's motion. Doc. 11-1, pp. 142-143. The court of appeals found that Gotshall had not complied with App. R. 26(B) because his motion did "not contain 'one or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation.'" Doc. 11-1, p. 141. The court of appeals also found that Gotshall had not shown good cause for filing his application more than 90 days after the appellate judgment had been journalized. *Id.*

On November 17, 2017, Gotshall filed a notice of appeal with the Supreme Court of Ohio (Doc. 11-1, pp. 143-145) along with a motion for leave to file delayed appeal (Doc. 11-1, pp. 146-167) (Case No. 17-1636). Gotshall's notice of appeal referred to the court of appeals'

7

judgment entered on November 28, 2016. Doc. 11-1, pp. 144, 147. Gotshall argued that he had not filed an appeal because he was not familiar with court procedures to appeal himself; he could not get help at Lake Erie Correctional Institution; and was transferred to Trumbull on December 28, 2016. Doc. 11-1, p. 149. On February 14, 2018, the Supreme Court of Ohio denied Gotshall's motion for a delayed appeal and dismissed the cause. Doc. 11-1, p. 168.

**E.     Federal Habeas Corpus**

Gotshall raises the following three grounds for relief in his Petition:

**Ground One**: Ineffective assistance of counsel

Supporting Facts:  Defense counsel refused to have an <u>accident reconstruction expert</u> investigate, failed to subpoena critical witnesses, failed to look at case evidence that prosecutor had before trial, failed to subpoena phone records. Defense counsel accused prosecutor of withholding evidence (during trial). A discovery hearing was held <u>after</u> the trial at wich [sic] point it became clear that it was my "defense counsel" who failed to examine evidence – this violates my 6th Amendment rights as the outcome of the trial would have been diffrent [sic] had defense counsel <u>dilengently</u> [sic] prepared for trial instead of counting on me to change my mind (about going to trial) and expect to accept a plea deal right up to the last minute before starting jury selection. <u>I was the victim</u>!

**Ground Two**: Prosecutor misconduct

Supporting Facts:  Prosecuting attorney Steve Michniak would not allow me to take a polygraph test after telling me that the alleged "victim" (Nick Duplessis) <u>refused</u> to take a polygraph test. A polygraph test would have cleared me. – When police witnesses testified (during trial) they misrepresented objective facts (measurements, accident reconstruction etc) – if not for prosecutor misconduct would have shown events as described were physically impossible.

**Ground Three**: [⁷]

Supporting Facts:  I was denied the right to a speedy trial because Ohio State Trooper Jennifer Detmer was on maternity leave at the time of my pre-trial hearing. I was out on bond at the time of this pre-trial hearing. I was threatened with having my bond revoked and placed back in the county jail for refusing to sign a waiver for a speedy trial (at first). I only signed this waiver to stay out of jail, keep my job and to keep from losing my home/everything I had. The court violated my 6th

---

⁷ There is no heading provided in Ground Three. Doc. 1, p. 7.

>Amendment right by threatening to revoke my bond so that I would sign a waiver to a speedy trial.

Doc. 1, pp. 5, 7, Doc. 6, p. 5 (emphasis in original).

### III. Law and Analysis

#### A. Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.      AEDPA Statute of Limitations**

28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus and provides, providing in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of --
>
> > (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief or other collateral relief is pending before the state courts. *Jurado v. Burt,* 337 F.3d 638, 640 (6th Cir. 2003). "[A]n application is pending so long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-220 (2002); *see also Applegarth v. Warden North Cent. Correctional Inst.*, 377 Fed. Appx. 448, 449-450 (6th Cir. 2010) (relying on *Carey* when concluding that, where an appeal was not taken to the Ohio Supreme Court from the denial of a Rule 5(A) motion for delayed appeal, AEDPA was not tolled beyond the 45-day period in which the petitioner had to file an appeal). This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

Respondent argues that Gotshall's Petition should be dismissed because it was filed beyond the statute of limitations. For the reasons discussed herein, the undersigned agrees.

11

### 1. Gotshall's Petition is untimely under 28 U.S.C. § 2244(d)(1)(A)

On May 6, 2015, a jury found Gotshall guilty of felonious assault. Doc. 11-1, pp. 11-12, 13. On July 31, 2015, the trial court sentenced Gotshall to four years in prison. Doc. 11-1, pp. 14-16. Gotshall appealed and, on May 23, 2016, the Eleventh District Court of Appeals affirmed the judgment of the trial court. Doc. 11-1, pp. 57-70. The court of appeals, however, remanded the matter to the trial court for the purposed of entering a nunc pro tunc entry to correctly reflect that Gotshall did not plead guilty but was found guilty by a jury. Doc. 11-1, pp. 68-69. The trial court entered the nunc pro tunc entry on May 25, 2016. Doc. 11-1, pp. 70-72.

Gotshall had 45 days from May 23, 2016, or until July 7, 2016, to appeal the Ohio Court of Appeals' judgment to the Ohio Supreme Court.[8] *See* S.Ct.Prac.R. 7.01(A)(1)(a)(i). Gotshall did not file an appeal within that time period.

Gotshall seeks to calculate the one-year period for filing a federal habeas petition from February 14, 2018, the date the Supreme Court of Ohio denied his motion for delayed appeal. Doc. 21, pp. 17, 38; Doc. 21-2, p. 83. He contends that his Petition, filed on July 13, 2018,[9] was therefore timely. *Id.* However, under 28 U.S.C. § 2244(d)(1)(A), Gotshall's one-year statute of limitations began to run when "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A).[10] The direct appeal period for Gotshall's judgment of conviction expired on July 7, 2016, or 45 days after the

---

[8] The Respondent uses the May 25, 2016, nunc pro tunc entry date as the starting point for calculation of the statute of limitations, indicating that Gotshall had 30 days to file an appeal with the court of appeals from the date the nunc pro tunc entry was filed. Doc. 17, p. 14. However, using that date does not take into account that Gotshall had 45 days from the court of appeals' decision affirming the judgment to appeal to the Supreme Court of Ohio.

[9] As noted herein, under the prison mailbox rule, Gotshall's Petition is deemed filed on July 9, 2018. *See* FN 1 above.

[10] Gotshall does not claim that any other section of 28 U.S.C. § 2244(d)(1) would apply in this case.

Ohio Court of Appeals entered its judgment on May 23, 2016. Thus, Gotshall had one year from that date or, until July 7, 2017, to file his federal habeas petition.

As indicated herein, Gotshall's Petition is deemed filed as of July 9, 2018. Thus, he filed his Petition more than one year after the expiration of the statute of limitations. Accordingly, absent tolling of the statute of limitations, his Petition is time-barred.

During the running of the above noted statute of limitations, Gotshall filed various motions for collateral review. As discussed below, while certain motions tolled the statute of limitations,[11] Gotshall's Petition was nonetheless not filed timely.

On August 16, 2016, Gotshall filed a motion for leave to file a delayed appeal. Doc. 11-1, pp. 95-102. Thus, up to, but not including August 16, 2016, the statute of limitations had run for 39 days. On November 3, 2016, Gotshall filed a motion to amend his motion for leave to file a delayed appeal pursuant to App. R. 5 to an application for reopening an appeal pursuant to App. R. 26(B). Doc. 11-1, pp. 103-119. The court of appeals overruled the motions on November 28, 2016, and December 6, 2016. Doc. 11-1, pp. 128, 132. Assuming arguendo that these were "properly filed" motions,[12] they only served to toll the statute of limitations, they did not restart the statute of limitations. *See Vroman, supra* (statutory tolling does not restart the statute of limitations clock); *see also Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("although the filing of the motion for delayed appeal may have tolled the running of the one-

---

[11] "A motion for judicial release is not a collateral attack on the underlying conviction or sentence, and thus does not toll the AEDPA statute of limitations." *Imburgia v. Bradshaw*, 2010 U.S. Dist. LEXIS 39574, * 13-14 (N.D. Ohio Apr. 22, 2010). Thus, Gotshall's motions for judicial release (Doc. 11-1, pp. 73, 75-84, 86-94) are not considered in the tolling analysis below.

[12] The court of appeals overruled the motion for leave to file a delayed appeal because the court of appeals found that Gotshall was attempting to utilize App. R. 5(A) improperly for the purpose of reopening his appeal and have an evidentiary hearing, which could not be accomplished through a motion for leave to file a delayed appeal. Doc. 11-1, p. 129. In light of this, Gotshall's motion for leave to file a delayed appeal may not be a "properly filed application" under 28 U.S.C. § 2244(d)(2).

year statute, it did not cause the statute to begin running anew when the state court denied the motion"); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (App. R. 26(B) application is considered a collateral post-conviction procedure). Gotshall did not file an appeal with the Supreme Court of Ohio from either the November 28, 2016, or the December 6, 2016, entry. However, under S.Ct.Prac.R. 7.01 (A)(1)(a)(i), he had until January 23, 2017, 45 days from the later of the two entries pertaining to his motion for leave to file a delayed appeal, to do so. Therefore, the statute of limitations resumed running on January 24, 2017.

From January 24, 2017, until August 25, 2017, when Gotshall filed a motion to reopen appeal with the court of appeals (Doc. 11-1, pp. 138-141), the statute of limitations ran for an additional 213 days. Adding those days to the previous 39 days, as of the filing of his August 25, 2017, motion to reopen, 252 days of the one-year statute of limitations had run. Assuming arguendo that the motion to reopen appeal was "properly filed" such that it served to toll the statute of limitations,[13] the period was tolled until September 14, 2017, when the court of appeals overruled the motion. Doc. 11-1, pp. 141-142. Gotshall did not file an appeal with the Supreme Court of Ohio from the September 14, 2017, entry. However, he had until October 30, 2017,[14] 45 days from the court of appeals' September 14, 2017, entry overruling his motion to reopen to do so. Therefore, the statute of limitations resumed running on October 31, 2017.

From October 31, 2017, until November 17, 2017, when Gotshall filed a notice of appeal and motion for leave to file a delayed appeal with the Supreme Court of Ohio, (Doc. 11-1, pp. 143-167), the statute of limitations ran for an additional 17 days. Adding those days to the 252

---

[13] The court of appeals denied the motion to reopen because it did not comply with the requirements of App. R. 26(B) and because there was no showing of good cause for filing the motion to reopen beyond the time period set forth in App. R. 26(B) for filing thereunder. Doc. 11-1, pp. 141-142. Thus, the motion may not be a "properly filed application" under 28 U.S.C. § 2244(d)(2).

[14] The forty-fifth day – October 29, 2017 – was a Sunday. Thus, Gotshall would have had until October 30, 2017, to file his appeal. *See* S.Ct.Prac.R. 3.03(A)(1).

days, as of November 17, 2017, 269 days of the one-year statute of limitations had run. Assuming arguendo that the motion for leave to file a delayed appeal was "properly filed," the statute of limitations was tolled until February 14, 2018, the date the Supreme Court of Ohio denied Gotshall's motion for a delayed appeal and dismissed his appeal. Doc. 11-1, p. 168.

Gotshall did not file a petition for certiorari with the Supreme Court of the United States. Further, since a motion for delayed appeal is an application for collateral review or postconviction relief, Gotshall is not entitled to tolling under 28 U.S.C. § 2244(d)(2) for the 90-day period for seeking certiorari in the Supreme Court of the United States. *See Foster v. Bobby*, 2010 WL 1524484, * 3-4 (N.D. Ohio Apr. 15, 2010) (discussing and relying on cases, including *Lawrence v. Florida*, 549 U.S. 327, 334 (2007) and *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001)); *see also Kimble v. Gansheimer*, 2009 WL 4676959, * 6, n. 2 (N.D. Ohio Dec. 4, 2009) ("The 90 day period for seeking certiorari to the United States Supreme Court does not toll the AEDPA's statute of limitations under § 2244(d)(2).") (relying on *Lawrence*, 549 U.S. at 327). Therefore, the statute of limitations resumed running on February 15, 2018. At that time, 269 days of the one-year statute of limitations had run. Thus, Gotshall had 96 more days (365-269 days), or until May 22, 2018, to file his federal habeas petition timely. However, Gotshall did not file his Petition until July 9, 2018, more than one-month after the one-year statute of limitations expired. Doc. 1. Accordingly, even taking into account statutory tolling, Gotshall's Petition is untimely under 28 U.S.C. § 2244(d).

### 2. Gotshall is not entitled to equitable tolling of the statute of limitations

AEDPA's statute of limitations is subject to equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citing *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010)). Equitable tolling allows courts to review time-barred

15

habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 Fed. Appx. 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). There are two forms of equitable tolling: (1) *traditional* equitable tolling; and (2) *actual innocence* equitable tolling. As discussed below, a petitioner, by satisfying the two-part test, may be entitled to traditional equitable tolling. Additionally, a petitioner may be entitled to actual innocence equitable tolling. However, for the reasons set forth below, Gotshall is entitled to neither form of equitable tolling.

### a. Gotshall is not entitled to traditional equitable tolling

A habeas petitioner is entitled to equitable tolling only if (1) "he has been pursuing his rights diligently[;]" and (2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Hall*, 662 F.3d at 749 (quoting *Holland*, 130 S.Ct. at 2560). Equitable tolling is "applied sparingly" and is evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).

Gotshall contends that he should be entitled to equitable tolling because "[he] had no legal assistance and prison prevents us (defendants) from doing anything in a 'timely matter.'" Doc. 21, p. 22 (emphasis in original); *see also* Doc. 21, p. 38 (stating that, while in prison, "at times, it took a few days just to get copies made" and "mail delivery took twice as long as it normally should" and "mail clerks (at Trumbull Corrections) always blamed the U.S. Postal Service for our mail getting 'lost' or 'delayed[]'") (emphasis in original).

16

While Gotshall contends his untimely filing should be excused because he lacked legal assistance, he proceeded in state court without legal assistance when filing various motions. Further, while he alleges general delays occurring in prison, he has not shown how prison delays prevented him from filing his federal habeas petition in a timely manner. Moreover, "*pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance[.]" *Keeling v. Warden, Lebanon Correctional Inst.*, 673 F.3d 452, 464 (6th Cir. 2012); *see also Hall*, 662 F.3d at 750-752 (lack of transcript, pro se status and limited law library access did not warrant equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("[L]ack of legal training, [a petitioner's] poor education, or even [a petitioner's] illiteracy" are not reasons to toll the statute of limitations.).

Considering the foregoing, Gotshall has not demonstrated that extraordinary circumstances stood in his way of timely filing his habeas petition. Furthermore, he does not specifically argue or demonstrate that he was diligently pursuing his rights. For these reasons, Gotshall is not entitled to traditional equitable tolling of the statute of limitations under the *Holland* two-part test.

### b. Gotshall is not entitled to actual innocence equitable tolling

In addition to equitable tolling under the traditional two-part test outlined above, "a petitioner may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. Appx. 606, 609 (6th Cir. 2012). "A valid claim of actual innocence requires '*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)) (emphasis supplied). "The

17

evidence must demonstrate factual innocence, not mere legal insufficiency." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

Gotshall contends that his defense counsel's admission, during a post-trial hearing, that he failed to review discovery is "new evidence" showing that a constitutional violation resulted in the conviction of one who is actually innocent, which he asserts backs up his claim of ineffective assistance of counsel.  Doc. 21, p. 39.  The discovery at issue was written statements made by Gotshall in private conversations with a third party on Facebook, which the prosecutor used to cross-examine Gotshall during trial.  Doc. 11-1, pp 49-51.  Aside from his vague and conclusory statement of actual innocence, Gotshall fails to show how the "new evidence," i.e., his defense counsel's after-trial admission that he had the discovery but had not seen it on the discovery disc (Doc. 11-1, p. 49), demonstrates his factual innocence.  Thus, Gotshall is not entitled to equitable tolling based on actual innocence.

## IV. Conclusion and Recommendation

For the reasons set forth above, the undersigned concludes that Gotshall's Petition is untimely under 28 U.S.C. § 2244(d). Further, Gotshall has not demonstrated an entitlement to equitable tolling of the statute of limitations. Accordingly, the undersigned recommends that the Court **GRANT** Respondent's Motion to Dismiss (Doc. 17) and **DISMISS** Gotshall's Petition (Doc. 1, Doc. 6) as barred by the statute of limitations.[15]

October 29, 2019    /s/ *Kathleen B. Burke*
　　　　　　　　　　　　　　　　　Kathleen B. Burke
　　　　　　　　　　　　　　　　　United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[15] Respondent alternatively argues that dismissal of Gotshall's Petition is warranted because of procedural default of all grounds and because ground two is not cognizable on federal habeas review. While dismissal on these alternative grounds may be warranted, since the Petition is barred by the statute of limitations, it is not necessary to consider them.

19